IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:25-CV-2-D

| | |
|---|---|
| ROBERT MATTHEWS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| GUEST SERVICES, INC., et el. | ) |
| | ) |
| Defendants. | ) |

On October 29, 2024, Robert Matthews ("Matthews"), Lawrence Jackson ("Jackson"), Jeffrey Johnson ("Johnson"), Welton Ferebee ("Ferebee"), Tracy Bowser ("Bowser"), Dennis Hunter ("Hunter"), Chris Chappell ("Chappell"), Jamie Godfrey ("Godfrey"), Matthew Bateman ("Bateman"), John Parrish ("Parrish"), Gerri White, Timothy Warden ("Warden"), Gregory Brown ("Brown"), Marcus White, David Perry ("Perry"), Gary Spellman, Edward Jordan ("Jordan"), Tama Spellman, Jamie Sutton ("Sutton"), Willis Danchise ("Danchise"), Roy Felton ("Felton"), Ronald Clark ("Clark"), Thomas Wiggins ("Wiggins"), John Pierce ("Pierce"), Jefferson Broughton ("Broughton"), and Cathy Harrell Lowry as administrator of the estate of Fleetwood Harrell ("Lowry") (collectively, "plaintiffs") filed a complaint in Perquimans County Superior Court against Guest Services, Inc. ("Guest Services") and Gerard T. Gabrys ("Gabrys") (collectively, "defendants") [D.E. 1-2]. Plaintiffs seek unpaid wages under the North Carolina Wage and Hour Act and other provisions of North Carolina law. See id. On January 8, 2025, defendants timely removed the action to this court based on federal question jurisdiction and federal diversity jurisdiction. See [D.E. 1].

On January 15, 2025, defendants moved to dismiss the complaint for failure to state a claim and [D.E. 10] and filed a memorandum in support [D.E. 11]. On January 31, 2025, plaintiffs

moved to stay consideration of defendants' motion to dismiss while the court considered plaintiffs' motion to remand [D.E. 16]. On February 7, 2025, the court granted plaintiffs' motion to stay [D.E. 18].

On February 7, 2025, plaintiffs moved to remand to Perquimans County Superior Court [D.E. 19] and filed a memorandum in support [D.E. 20]. On February 28, 2025, defendants responded in opposition [D.E. 21]. On March 14, 2025, plaintiffs replied [D.E. 22]. As explained below, the court grants plaintiffs' motion to remand, remands the action to Perquimans County Superior Court, and dismisses without prejudice defendants' motion to dismiss.

I.

Plaintiffs are North Carolina residents who worked, at different times and in different roles, for Guest Services at defendants' Harvey Point facility in Hertford, North Carolina. See Compl. [D.E. 1-2] ¶¶ 1–31, 34. Gabrys worked as Guest Services's Chief Executive Officer from 2001 through December 31, 2021. See id. at ¶ 32. Guest Services "is one of the longest-running contractors for the United States government" and provides "hospitality management and business support services." Id. at ¶ 33. Each plaintiff worked for Guest Services for at least a decade and some plaintiffs worked for Guest Services for "several decades." Id. at ¶ 34.

During their employment, plaintiffs allege that they formed an "oral agreement" with Guest Services "outlining the terms and conditions of their employment, including certain rates, compensation terms, and benefits." Id. at ¶ 35. Plaintiffs allege that since December 8, 1995, Guest Services "represented and promised its employees that they would be entitled to a payout on the last day of their employment with [Guest Services] equivalent to two . . . days of pay for each year of their employment with" Guest Services. Id. at ¶ 36. Plaintiffs allege that this agreement "was originally known as Terminal Leave Pay." Id. Plaintiffs also allege that the only

2

condition for receiving Terminal Leave Pay was that an employee not be fired before retiring from Guest Services. See id. at ¶ 38. Furthermore, plaintiffs allege that Guest Services offered the Terminal Leave Pay program to plaintiffs when Guest Services hired plaintiffs, and that plaintiffs accepted the Terminal Leave Pay program as a compensation term. See id. at ¶ 37. Moreover, plaintiffs allege that Guest Services maintained the Terminal Leave Pay program for "over two decades" and has paid "over $400,000 to retirees over the prior ten years." Id. at ¶ 39.

On July 1, 2019, defendants allegedly abandoned the Terminal Leave Pay program without notifying plaintiffs and replaced the program with a new policy ("2019 amendment"). See id. at ¶ 40. Plaintiffs contend that they did "not consent to modifying the terms of their original agreement" and that defendants did not replace the Terminal Leave Pay program with any "additional benefit[s], right[s], or interest[s]." Id. at ¶ 41. Plaintiffs allege that the 2019 amendment "deviated significantly" from defendants' original Terminal Leave Pay program. Id. at ¶ 42; see id. at ¶ 43. Defendants also allegedly told plaintiffs that the 2019 amendment applied retroactively to their employment agreements and that plaintiffs would not receive Terminal Leave Pay upon retirement. See id. at ¶¶ 44–56.

Plaintiffs also allege that, in addition to wages for two days of pay for each year of employment, defendants also owe plaintiffs certain "fringe benefits" ("supplemental wages") of "over $4 per hour" because of defendants' role as a government contractor. Id. at 46. Plaintiffs allege that defendants promised to pay plaintiffs these supplemental wages but have not done so. See id. at ¶¶ 46–50.

On October 31, 2021, plaintiffs allege Guest Services lost its contract with the federal government, and Boeing obtained the contract. See id. at ¶ 51. "Most, if not all, plaintiffs were not ready . . . to retire permanently . . . and intended to keep working, including for Boeing under

3

the new federal contract." Id. at ¶ 52. Sometime after October 31, 2021, Gabrys met with Guest Services's employees (including plaintiffs) and thanked them for their time with the company. See id. at ¶ 53. In that meeting, plaintiffs asked Gabrys "whether they were going to receive their Terminal Leave Pay." Id. Gabrys told plaintiffs that they would not receive any Terminal Leave Pay if they went to work for Boeing. See id. at ¶ 54. Plaintiffs allege that defendants denied "years of benefits promised to [plaintiffs]" by defendants under the Terminal Leave Pay program. See id.

In January 2023, plaintiffs submitted a global settlement demand to Guest Services "for violations of the . . . [McNamara-O'Hara Service Contract Act of 1965, 41 U.S.C. §§ 6701 ("SCA")] and other State and Federal law concerning deferred pay fringe benefits, terminal leave pay," and Guest Services's alleged handling of "associated record-keeping and notice procedures." [D.E. 21] 5; [D.E. 21-4] 2–13; cf. [D.E. 20] 16–17. Plaintiffs demanded more than $1.3 million. See [D.E. 21] 5; [D.E. 21-4] 9.

On December 29, 2023, plaintiffs filed a similar action against defendants in the United States District Court for the Western District of North Carolina. See 3:23-CV-910 [ECF 1] ("Matthews I").[1] Plaintiffs brought claims under state and federal law. See id. On April 24, 2024, defendants moved to dismiss plaintiffs amended complaint in that action. See 3:23-CV-190 [ECF 18]. On August 21, 2024, the United States District Court for the Western District of North Carolina held that federal law did not govern plaintiffs' claims and that the court lacked subject-matter jurisdiction over plaintiffs' state law claims because plaintiffs failed to satisfy the amount-in-controversy requirement in 28 U.S.C. § 1332, and dismissed plaintiffs' amended complaint. See 3:23-CV-910 [ECF 23].

---

[1] For clarity, the court refers to documents filed in the action before the United States District Court for the Western District of North Carolina as "3:23-CV-910 [ECF]" and documents filed in this action as "[D.E.]."

On October 29, 2024, plaintiffs sued defendants in Perquimans County Superior Court and alleged (1) violations of the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 et seq. ("NCWHA"), (2) breach of contract, (3) breach of the covenant of good faith and fair dealing, (4) conversion, (5) unjust enrichment, (6) quantum meruit, (7) violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), and (8) negligence. Compl. ¶¶ 57–129. On January 8, 2025, defendants timely removed the action to this court based on federal question jurisdiction and federal diversity jurisdiction. See [D.E. 1].

In their notice of removal, defendants argue that the court has jurisdiction under 28 U.S.C. § 1331 because Guest Services's claims "in whole or in part, arise under and are completely preempted" by the SCA. Id. at 1. Specifically, defendants argue that federal contracts "are subject to the provisions" of the SCA, which "require[ ] government contractors like [Guest Services] to pay employees performing services on federal contracts certain wages and fringe benefits set by the United States Secretary of Labor." Id. at ¶ 7; 41 U.S.C. §§ 6701 et seq. According to defendants, because plaintiffs seek those supplemental wages, the SCA governs plaintiffs' claims and provides subject-matter jurisdiction under section 1331. Id. at ¶ 9.

Defendants also argue that the court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse, and plaintiffs' individual damages exceed $75,000. See id. at ¶¶ 11–16. Specifically, defendants argue that plaintiffs' complaint contains seven claims for damages in excess of $25,000 and requests for liquidated damages. See id. at ¶¶ 13–14. Defendants also argue that the court should consider plaintiffs' settlement demand of over $1.3 million as evidence that each plaintiff seeks damages in excess of $75,000. See id. at ¶ 15; [D.E. 21] 5. According to defendants, plaintiffs' aggregated damages and their settlement demand establish that each plaintiff seeks more than $75,000 in damages. See [D.E. 1] at ¶ 16.

On February 7, 2025, plaintiffs moved to remand the action to Perquimans County Superior Court. See [D.E. 19, 20]. In support, plaintiffs argue that the court lacks jurisdiction over the action. As for federal question jurisdiction, plaintiffs argue that their complaint does not contain a federal claim or assert a state law claim which turns upon the construction of a federal law. See [D.E. 20] 6–13. Moreover, plaintiffs argue that the SCA does not preempt their claims. See id. at 9–11. As for diversity jurisdiction, plaintiffs concede that the parties are completely diverse but deny that each plaintiff's damages satisfy section 1332's amount-in-controversy requirement. See id. at 13–17. Specifically, plaintiffs argue that defendants improperly aggregate plaintiffs' damages in their notice of removal and that plaintiffs' settlement demand does not support defendant's contention that each plaintiff seeks more than $75,000 in damages. See id. at 16–17.

Defendants reply that the SCA governs plaintiffs' claims for supplemental wages. See [D.E. 21] 10–13. Specifically, defendants argue that the "only reason [p]laintiffs could be entitled to the [supplemental wages] they are seeking is because [the SCA] makes such wages and fringe benefits mandatory." Id. at 11. In support, defendants cite Mayes v. Excelsior Ambulance Serv., Inc., No. 3:17-CV-02358, 2019 WL 1261248 (D.S.C. Mar. 19, 2019) (unpublished), and argue that "at least some" of plaintiffs' state law claims "necessarily arise under federal law." Id. at 12–13.

II.

"[F]ederal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations." Strawn v. AT & T Mobility, LLC, 530 F.3d 293, 296 (4th Cir. 2008); see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Priselac v. Chemours Co., 561 F. Supp. 3d 562, 568–69 (E.D.N.C. 2021). Under 28 U.S.C. § 1441,

> [e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have

> original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a); see Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004); Colo. Bankers Life Ins. Co. v. AT Den. Invs., APS, 526 F. Supp. 3d 118, 123 (E.D.N.C. 2021). Under 28 U.S.C. § 1331, the district court "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under 28 U.S.C. §1332, the district court has jurisdiction where the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Id. § 1332(a).

The removing party "bears the burden of showing removal is proper," including showing that the federal court has subject-matter jurisdiction over the case. Mayor of Balt. v. BP P.L.C., 31 F.4th 178, 197 (4th Cir. 2022) (quotation omitted); see Bartels ex rel. Bartels v. Saber Healthcare Grp., LLC, 880 F.3d 668, 680 (4th Cir. 2018); Prince v. Sears Holdings Corp., 848 F.3d 173, 176 (4th Cir. 2017); Strawn, 530 F.3d at 296–97; Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). If a court lacks subject-matter jurisdiction over a removed case, the proper remedy is to remand rather than dismiss. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject[-]matter jurisdiction, the case shall be remanded."); Roach v. W. Va. Reg'l Jail & Corr. Facility Auth., 74 F.3d 46, 49 (4th Cir. 1996).

The court "must strictly construe removal jurisdiction," and if federal jurisdiction over the removed case "is doubtful," the court must remand the case. Mayor of Balt., 31 F.4th at 197 (quotations omitted); see 28 U.S.C. § 1447(c); Common Cause v. Lewis, 956 F.3d 246, 252 (4th Cir. 2020); Mulcahey, 29 F.3d at 151; Colo. Bankers Life Ins. Co., 526 F. Supp. 3d at 123. Moreover, a court should "resolve doubts in favor of remand." Palisades Collections, LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008); see Elliott v. Am. States Ins. Co., 883 F.3d 384, 390 (4th

7

Cir. 2018); Colo. Bankers Life Ins. Co., 526 F. Supp. 3d at 123. When evaluating a motion to remand, the court considers the pleadings and any materials attached or incorporated into the complaint. See Fed. R. Civ. P. 10(c).

A.

In their motion to remand, plaintiffs argue that the court lacks federal question jurisdiction under section 1331. See [D.E. 20] 6–13; 28 U.S.C. § 1331. In determining whether a case arises under 28 U.S.C. § 1331—and whether a case is removable under 28 U.S.C. § 1441(a)—a district court applies the "well-pleaded-complaint rule." Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 830 & n.2; Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Under the well-pleaded-complaint rule, federal-question jurisdiction under 28 U.S.C. § 1331 exists only when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." Holmes Grp., Inc., 535 U.S. at 831 (emphasis removed) (quotation omitted). There must be a "substantial, disputed question of federal law that is a necessary element of any of the well-pleaded state claims." Pinney v. Nokia, Inc., 402 F.3d 430, 445 (4th Cir. 2005) (quotations omitted); see Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 13 (1983); Treacy v. Newdunn Assocs., LLP, 344 F.3d 407, 410–11 (4th Cir. 2003). "For a federal issue to be both a necessary and disputed element, the vindication of a right under state law must necessarily turn on some construction of federal law." Treacy, 344 F.3d at 411 (cleaned up). Thus, in determining whether plaintiffs' complaint presents a federal question, the court considers "only whether a disputed question of federal law is an essential element of one of the well-pleaded state claims." Pinney, 402 F.3d at 445.

In the complaint, plaintiffs assert claims under North Carolina state law, not federal law. See Compl. ¶¶ 57–129. Moreover, plaintiffs' North Carolina state law claims do not turn on some

construction of federal law. See Treacy, 344 F.3d at 411. Thus, plaintiffs' well-pleaded complaint does not contain a federal question.

In opposition to this conclusion, defendants argue that the SCA preempts at least some of plaintiffs' claims. Preemption is based on Congress's power to "take unto itself all regulatory authority over [a given topic]." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947); see M'Culloch v. Maryland, 17 U.S. 316, 405–06 (1819). Preemption stems from the Supremacy Clause, U.S. Const. art. VI, cl. 2, and renders a state provision impotent when Congress enacts a conflicting federal provision that displaces state law. See, e.g., Maryland v. Louisiana, 451 U.S. 725, 746 (1981).

A court begins "with the basic assumption that Congress did not intend to displace state law." Id. at 746; see Rice, 331 U.S. at 230. Congress's intent to preempt state law may overcome this basic assumption. Maryland, 451 U.S. at 746–47. Analyzing a statute's preemptive effect requires a court to construe the federal statute and putatively-preempted state law and then determine whether they "conflict." Perez v. Campbell, 402 U.S. 637, 644 (1971); see Chi. & N. W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317–18 (1981).

Preemption may be express or implied. See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152–53 (1982); Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977); Cox v. Shalala, 112 F.3d 151, 154 (4th Cir. 1997). Federal law preempts state law in three circumstances: (1) "express preemption," where "Congress has expressly declared its intent to preempt state law"; (2) "field preemption," where Congress has "'occupied the field' by regulating so pervasively that there is no room left for the states to supplement federal law"; and (3) "conflict preemption," where "there is actual conflict between the state and federal laws." Martinez-Hernandez v. Butterball, LLC, 578 F. Supp. 2d 816, 818 (E.D.N.C. 2008) (quotation omitted); see Anderson v. Sara Lee

Corp., 508 F.3d 181, 191 (4th Cir. 2007); Pinney, 402 F.3d at 453; Cox, 112 F.3d at 154; Davis v. Capital Ready Mix Concrete, LLC, No. 5:21-CV-463, 2023 WL 7346060, at *6 (E.D.N.C. Nov. 7, 2023) (unpublished); Zelaya v. J.M. Macias, Inc., 999 F. Supp. 778, 781–82 (E.D.N.C. 1998).

"When considering the relationship between other statutes and the SCA, courts have found that the two are not mutually exclusive and have allowed plaintiffs otherwise covered by the SCA to bring suit, so long as the provisions at issue are not in direct conflict." Longo v. Trojan Horse Ltd., 992 F. Supp. 2d 612, 616 (E.D.N.C. 2014). The SCA requires every service contract of the United States, in excess of a certain sum, to include a provision for fringe benefits "not otherwise required by Federal, State, or local law to be provided by the contractor or subcontractor." 41 U.S.C. § 351(a)(2). The SCA "assumes the application of local laws benefitting workers, and adds other provisions to insure that benefits and protections for contract employees reach a certain minimum." Diaz v. Gen. Sec. Servs. Corp., 93 F. Supp. 2d 129, 135–36 (D.P.R. 2000). Thus, the SCA does not expressly preempt plaintiffs' state law claims or their claim for supplemental wages.

As for implied preemption, Congress enacted the SCA "to provide labor standards for the protection of employees of contractors who perform maintenance service for federal agencies." Masters v. Maryland Mgmt. Co., 493 F.2d 1329, 1332 (4th Cir. 1974); Longo, 992 F. Supp. 2d at 615. "The administrative remedies provided under the SCA are tailored for the recovery of wages and benefits due employees." Longo, 992 F. Supp. 2d at 615; Berry v. Andrews, 535 F. Supp. 1317, 1318 (M.D. Ala. 1982). There is, however, "no private right of action under the SCA." Perez v. Owl, Inc., 110 F.4th 1296, 1304 (11th Cir. 2024); Lee v. Flightsafety Servs. Corp., 20 F.3d 428, 431 (11th Cir. 1994); Longo, 992 F. Supp. 2d at 615.

The mere incorporation by state law of a federal standard for determining the existence of state liability does not create federal-question jurisdiction for removal when Congress declined to

create a statutory private right of action based upon the violation of that federal standard. See Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 808–17 (1986). "Accordingly, in removed cases in which a state cause of action turns on the meaning of a federal statutory standard, removal would not be proper if the federal statute did not provide a private claim for its violation." 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3722.1 (Rev. 4th ed. 2025); see id. n. 46 (collecting cases); Burrell v. Bayer Corp., 918 F.3d 372, 378–79 (4th Cir. 2019). By not including a private right of action in the SCA, "Congress has also foreclosed any successful argument of complete preemption. The failure of Congress to provide a private right of action shows that it does not intend [the] SCA to occupy the whole field." Inkrote v. Prot. Strategies Inc., No. 3:09-CV-51, 2009 WL 3295042, at *7 (N.D. W. Va. Oct. 13, 2009) (unpublished). Thus, the SCA does not implicitly preempt plaintiffs' state law claims.

As for defendants' arguments that the SCA preempts at least plaintiffs' claims for supplemental wages, the SCA does not preempt state law claims for employee benefits conferred by the SCA. See, e.g., Perez, 110 F.4th at 1306; Masters, 493 F.2d at 1332; Menocal v. GEO Grp., Inc., 113 F. Supp. 3d 1125, 1135 (D. Colo. 2015); ICP Northwest, LLC v. United States, 98 Fed. Cl. 29, 44 (2011); Inkrote, 2009 WL 3295042, at *5. "The mere presence of a federal issue in a state cause of action is not, by itself, enough to confer federal question jurisdiction." Merrell Dow, 478 U.S. at 808. Moreover, the court resolves any doubts as to subject-matter jurisdiction in favor of remand. See Elliott, 883 F.3d at 390; Palisades Collections, 552 F.3d at 336; Colo. Bankers Life Ins. Co., 526 F. Supp. 3d at 123. Defendants fail to establish that the SCA preempts plaintiffs' state law claims for supplemental wages.

To the extent the United States District Court for the District of South Carolina reached a contrary conclusion, see Mayes, 2019 WL 1261248 at *3–5, the court disagrees. In light of the

11

Supreme Court's presumption against complete preemption, Merrell Dow, the Fourth Circuit's admonition that lower courts must resolve uncertainties as to jurisdiction in favor of remand, and the SCA's text, the court concludes that the SCA does not preempt plaintiffs' claims. Thus, the court lacks jurisdiction under 28 U.S.C. § 1331.

B.

The parties agree that complete diversity exists but dispute whether plaintiffs satisfy section 1332's amount-in-controversy requirement. See [D.E. 20] 13. Where the complaint does not specify the amount in controversy, the removing party must prove the jurisdictional amount by a preponderance of the evidence. See Strawn, 530 F.3d at 298; Hardig v. Certainteed Corp., No. 3:11CV535, 2012 WL 423512, at *1 (W.D.N.C. Feb. 9, 2012) (unpublished); Anthony v. Serv. Corp. Int'l, No. 3:10CV642, 2011 WL 1343195, at *3 (W.D.N.C. Mar. 18, 2011) (unpublished), report and recommendation adopted, 2011 WL 1343159 (W.D.N.C. Apr. 8, 2011) (unpublished).

"Courts generally determine the amount in controversy by reference to the plaintiff's complaint." JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010); see St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 291 (1938) Wiggins v. N. Am. Equitable Life Assurance Co., 644 F.2d 1014, 1016 (4th Cir. 1981). To calculate an amount in controversy, a court does not include interest and attorneys' fees. See First Nat. Bank v. La. Highway Comm'n, 264 U.S. 308, 310 (1924); Pinel v. Pinel, 240 U.S. 594, 597 (1916). "The key inquiry in determining whether the amount-in-controversy requirement is met is not whether the plaintiff will actually recover but an estimate of the amount that will be put at issue in the course of the litigation." Scott v. Cricket Commc'ns, LLC, 865 F.3d 189, 196 (4th Cir. 2017) (cleaned up); see McPhail v. Deere & Co., 529 F.3d 947, 956 (10th Cir. 2008); Padgett Props., LLLP v. Nautilus Ins. Co., 645 F. Supp. 3d 538, 542 (E.D.N.C. 2022). "When the amount of damages a plaintiff seeks is unclear, the court may

look at the entire record, including the complaint, the removal petition and affidavits and make an independent evaluation as to whether or not the jurisdictional amount is in issue." Anthony, 2011 WL 1343195, at *3; see Dash v. FirstPlus Home Loan, 248 F. Supp. 2d 489, 498–99 (M.D.N.C. 2003). Moreover, the court may consider plaintiffs' settlement demand in determining whether plaintiffs' damages satisfy section 1332(a)'s amount-in-controversy requirement. See, e.g., Carroll v. Stryker Corp., 658 F.3d 675, 682 n.2 (7th Cir. 2011); McPhail v. Deere & Co., 529 F.3d 947, 956 (10th Cir. 2008); Qureshi v. Six Flags Am. LP, 757 F. Supp. 3d 629, 634 (D. Md. 2024); Green v. Caterpillar Inc., No. 2:14-CV-26, 2014 WL 4798705, at *3 (W.D.N.C. Sept. 26, 2014) (unpublished). The court also may consider damages amounts in similar cases. See, e.g., Anthony, 2011 WL 1343195, at *3–4.

"When two or more plaintiffs . . . unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount" under section 1332(a). Troy Bank v. G.A. Whitehead & Co., 222 U.S. 39, 40–41 (1911). A court, however, may aggregate several plaintiffs' damages when they "unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." Id. In other words, "[m]ultiple plaintiffs . . . can aggregate their claims only if they are suing on a shared right or undivided interest, such as when both plaintiffs are parties to the same contract." Allstate Ins. Co. v. Hechinger Co., 982 F. Supp. 1169, 1171 (E.D. Va. 1997); see Feikema v. Texaco, Inc., 16 F.3d 1408, 1412 (4th Cir. 1994); Glover v. Johns–Manville Corp., 662 F.2d 225, 231–32 (4th Cir. 1981). A plaintiff's claim for damages of "over $25,000" is not enough to make it "unequivocally clear and certain" that the amount in controversy is over $75,000. Padgett Props., 645 F. Supp. 3d at 542; Franks v. SSC Brevard Operating Co., No 1:19-CV-41, 2019 WL 3797422, at *3 (W.D.N.C., Aug. 12, 2019) (unpublished).

Defendants make several arguments concerning why plaintiffs' asserted damages satisfy section 1332(a)'s amount-in-controversy requirement. See [D.E. 21] 16–23. First, defendants argue that the court should consider plaintiffs' settlement demand of over $1.3 million as evidence that each plaintiff seeks damages in excess of $75,000. See [D.E. 1] ¶ 15; [D.E. 21] 5. Defendants also argue that the court should consider plaintiffs' argument in Matthews I that their damages satisfied section 1332(a)'s amount-in-controversy threshold. In Matthews I plaintiffs proceeded as a class, opposed defendants' motion to dismiss, and argued that the United States District Court for the Western District of North Carolina had jurisdiction under section 1332 because plaintiffs "alleged sufficient fact supporting that one or more [p]laintiffs have damages that exceed $75,000." 3:23-CV-910 [ECF 21]. According to defendants, because plaintiffs have brought largely the same claims in this action and added a claim for treble damages, the court may infer that plaintiffs' damages equal or exceed the asserted damages in Matthews I. See [D.E. 21] 16–17. Defendants also argue that success by one of the plaintiffs on different combinations of their asserted claims would satisfy section 1332(a)'s amount-in-controversy requirement. See id. 18–21.

Plaintiffs' pretrial demand sought $1,335,908.76. See [D.E. 21-4] 9. Plaintiffs admit, however, that they "still do not have all the facts to adequately plead an amount in controversy in excess of $75,000." [D.E. 22] 8. Moreover, if the court did consider plaintiffs' settlement demand and divided it evenly among the plaintiffs, then each plaintiff would assert claims for approximately $51,381.11, which is below section 1332(a)'s amount-in-controversy requirement. But this back-of-the-envelope figure underscores the present indeterminacy of each plaintiff's asserted damages. At bottom, plaintiffs' $1,335,908.76 demand does not establish that any particular plaintiff seeks damages exceeding $75,000.

Defendants also argue that the court has jurisdiction because at least one plaintiff's damages exceed $75,000. See id. 17–21. Unlike in Matthews I, however, plaintiffs are not proceeding as a class. If plaintiffs were, the court could exercise supplemental jurisdiction over the entire class provided that a single plaintiff's asserted damages exceed $75,000. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 549 (2005). But plaintiffs have chosen to proceed individually. Moreover, even if defendants were successful in establishing that a single plaintiff seeks damages in excess of $75,000, the court would still need to assess its jurisdiction as to every other plaintiff and remand those plaintiffs whose damages fell below $75,000. See, e.g., Glover, 662 F.2d at 231.

Defendants fail to establish that any specific plaintiff's individual damages satisfy section 1332(a)'s amount-in-controversy requirement. Because defendants fail to satisfy their burden and because the court must resolve doubts as to jurisdiction in favor of remanding, the court lacks jurisdiction under section 1332. Thus, the court grants plaintiffs' motion to remand and remands the action to Perquimans County Superior Court.

III.

In sum, the court GRANTS plaintiffs' motion to remand [D.E. 19], REMANDS the action to Perquimans County Superior Court, and DISMISSESS WITHOUT PREJUDICE defendants' motion to dismiss for failure to state a claim [D.E. 10].

SO ORDERED. This 29 day of July, 2025.

JAMES C. DEVER III
United States District Judge